Filed 3/22/24  P. v. Quijada CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RICHARD ROBERT QUIJADA,<br><br>     Defendant and Appellant. | B318184<br><br>(Los Angeles County<br>Super. Ct. No. KA013919) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge. Affirmed.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

# I.   INTRODUCTION

Defendant Richard Quijada appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6.[1]  We affirm.

# II.   BACKGROUND

A.   *Prior Proceedings*

1.   <u>First Preliminary Hearing</u>

In January 1992, the Los Angeles County District Attorney's Office (the District Attorney) filed an information in case number KA010081, charging, as relevant for purposes of this appeal, defendant, Benito Gonzalez (Benito), Everett Gonzalez (Everett), and Arturo Ruedas (Ruedas), with the murder of Juan Lopez (§ 187, subd. (a)), assault with a deadly weapon of Luiz Figueroa (§ 245, subd. (a)(1)), second degree robbery (§ 211), and attempted second degree robbery (§§ 664, 211).  The information also alleged as a special circumstance that the murder was committed while the defendants were engaged in a robbery. (§ 190.2, subd. (a)(17).)

Following the presentation of evidence at a preliminary hearing, defendants moved to set aside the information pursuant

---

[1]   Further statutory references are to the Penal Code unless otherwise indicated.  The Legislature renumbered section 1170.95 as section 1172.6 effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we will refer to the statute by its current section number only.

to section 995.[2]  The prosecutor did not oppose the motion with respect to the robbery special circumstance allegations against defendant, Ruedas, and Benito.  The prosecutor explained:  "As to [defendant], the only reason I'm not proceeding on him is that there is a problem of proof at this time, and it seems to me to be futile to go ahead and try and threaten him with the maximum punishment when in fact I know that the evidence I have is insufficient to support that, even though I do believe he is the actual shooter."  The trial court struck the robbery special circumstance allegation as to defendant, Ruedas, and Benito.

The District Attorney subsequently dismissed the charges against defendant and Ruedas from the information in case number KA010081 and, in August 1992, filed an information in case number KA013919, charging them with murder (§ 187, subd. (a)), attempted second degree robbery (§§ 664, 211), and second degree robbery (§ 211).  The information included a robbery special circumstance allegation against defendant for the murder, and alleged that defendant personally used a firearm during the course of all three felonies.

### 2.    Second Preliminary Hearing

Following a second preliminary hearing, defendant moved to dismiss the personal use of a firearm allegations and the special circumstance robbery allegation against him.  The

---

[2]      Section 995 provides that a trial court shall set aside an information if, among other things, "the defendant had been committed without reasonable or probable cause."  (§ 995, subd. (a)(2)(B).)

3

prosecutor agreed there was insufficient evidence to support the allegations, and the trial court struck them.

### 3. Amended Information

In November 1992, the District Attorney filed an amended information against defendant and Ruedas for: murder (§ 187, subd. (a); count 1); attempted second degree robbery (§§ 664, 211; count 2); and second degree robbery (§ 211; count 3). The District Attorney also alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that the crimes were committed in furtherance of a criminal street gang (§ 186.22, subd. (b)(1) & (2)).

### 4. Trial

#### a. Avalos

Martin Avalos testified that on September 13, 1991, at approximately 11:45 p.m., Avalos and a friend walked out of a convenience store in El Monte and waved to their friends, Lopez and Figueroa (the eventual murder and robbery victims). When Avalos saw his two friends detained and attacked by defendant and three other men, he ran toward them in order to render aid to his friends.

Avalos saw Sylvia Garcia sitting in a car parked near the site of the attack. One of the attackers struck Lopez and another hit Figueroa in the ribs and searched his pockets. After Figueroa ran away from the attackers, one of the men yelled "Shoot him, shoot him." Avalos then heard Lopez say, "You shoot me if you're a man," after which, a man walked up to Lopez and shot him in

the chest.  The four attackers then got into the car in which Garcia had been sitting and drove away.

Avalos knew three of the attackers, including defendant, and knew they were members of a street gang.

### b.  Figueroa

Figueroa testified that he was with Lopez when they were attacked by four men demanding money.  While Ruedas and another man searched Figueroa, Lopez tried to defend himself against the remaining two.  When one of the men said, "give me the gun," another threw one to him.  Lopez said, "shoot me," and the now armed man did so.

### c.  Garcia

Sylvia Garcia testified that earlier on the day of the shooting, Fernando Salazar (Salazar) showed her a gun.  Later, she, defendant, Ruedas, Salazar, Benito, Everett, and another woman were driving in a car when they realized they did not have enough money to purchase alcohol.  Salazar suggested they commit a robbery, and everyone in the car agreed.  After Salazar selected Figueroa and Lopez as the targets of the robbery, Benito parked his car, and everyone got out.  The men approached Figueroa and Lopez while the women stayed near the car.  Garcia subsequently walked to where the robbery was occurring and pulled on defendant in order to get him to come back to the car.  But defendant did not want to leave.  At some point, Garcia saw Salazar return to the car holding a gun.  Salazar fired once in the

air, and then shot Lopez. Everyone returned to the car and drove away.

Garcia admitted that defendant, Ruedas, Benito, and Everett were members of a gang and she was an affiliate of the same gang. Salazar, who was deceased by the time of trial, was not a member of the gang. Garcia denied defendant was her boyfriend.

### d. Detective Burks

Los Angeles County Sheriff's Department Detective Gerald Burks testified that Garcia told him she had grown up with Ruedas, Everett, and defendant and had known them for years. She also reported being defendant's girlfriend; the two had started dating a week prior to the shooting.

Burks interviewed defendant, who admitted that everyone in the car agreed to rob Figueroa and Lopez. When Burks told defendant that the police believed he was the shooter, defendant claimed this was a case of misidentification and that Salazar was the shooter. The detective responded with skepticism because defendant did not look "anything like" Salazar. When the deputy asked defendant how someone could have mistakenly identified defendant as having had the gun, defendant said his fingerprints may be on the gun because he had touched a gun that Salazar showed him earlier in the day. Further, defendant admitted to saying "'Give me the gun,'" but claimed that he did so as a question, and was only repeating what Salazar had said. The police never recovered the gun. Defendant admitted that after the shooting, as he and the others fled in the car, he said words to the effect of: "Fuck him, he deserved it."

6

e.    Defendant

Defendant testified at trial and denied engaging in a robbery.  Defendant claimed that Lopez was jumping around and talking in a loud voice when Salazar shot him.

f.    Ruedas

Ruedas testified that he saw Salazar holding a gun prior to the shooting.  Ruedas denied knowing why the group got out of the car.  He also denied seeing a robbery or a fight.  He heard a gunshot, but did not know who fired the gun.

Ruedas admitted that he previously told a detective that he was the lookout for a planned robbery but now claimed that was a lie.  Ruedas also admitted that he told three different law enforcement officers that defendant was the shooter, but refused to do so in a tape-recorded interview.[3]  Ruedas explained that he only identified defendant as the shooter to "get away from the situation."  Ruedas believed he would be killed if he testified against a fellow gang member.

5.    <u>Jury Instructions and Argument</u>

During the jury instruction conference, defendant requested that the court deliver all the CALJIC instructions on murder, rather than only the instructions that applied to a theory of felony murder.  The prosecutor objected, "Your Honor, it's my position that if there is not a robbery, these defendants are not

_____

[3]    In the tape-recorded interview, Ruedas identified Salazar as the shooter.

7

guilty of anything." He added that the delivery of jury instructions on murder theories other than felony murder would confuse the jury.

The trial court sustained the prosecutor's objection and instructed the jury on aiding and abetting (CALJIC No. 3.01), murder (CALJIC No. 8.10), and first degree felony murder (CALJIC No. 8.21).

The prosecutor argued to the jury that although Ruedas had named defendant as the shooter, "it doesn't really matter whether you decide he was the actual shooter or he was there assisting, aiding and helping what took place . . . ."

### 6. Verdict and Sentencing

The jury convicted defendant and Ruedas of first degree murder, second degree robbery, and attempted second degree robbery, and found true the allegation that a principal was armed with a firearm. The jury found the gang allegations to be not true.

The trial court sentenced defendant to 29 years to life in state prison and we affirmed defendant's conviction in an unpublished opinion. (*People v. Quijada* (July 21, 1994, B072776) [nonpub. opn.].)

## B. *Section 1172.6 Petition*

In 2019, defendant filed a section 1172.6 petition, asserting that he was convicted under a felony murder theory or the natural and probable consequences doctrine and based on amendments to sections 188 and 189, he could not now be

8

convicted of murder. The trial court appointed counsel to represent defendant, issued an order to show cause, and held an evidentiary hearing at which the parties declined to call any witnesses.

The trial court explained that it would consider this court's prior appellate opinion affirming defendant's conviction, the reporter's and clerk's transcripts from defendant's appeal, the jury instructions and verdict forms from defendant's trial, and the appellate opinion from Everett's appeal (*People v. Gonzalez* (Sept. 29, 1994, B075164) [nonpub. opn.].)

The trial court stated that it was acting as an independent fact finder to determine whether the prosecution had proven, beyond a reasonable doubt, that defendant was guilty of murder on a currently valid theory of murder. The court then recited the evidence presented at trial that demonstrated "one of two individuals [was] the shooter: One being [Salazar], 'Wizard,' or [defendant]." The court found the testimony of defendant, Ruedas, and Garcia, identifying Salazar as the shooter, to be not credible. In the court's view, these witnesses falsely identified Salazar as the shooter because Salazar was not a fellow gang member, was a juvenile and would likely to be punished less harshly, and was deceased at the time of trial. Further, the court found that Garcia was not credible because her trial testimony, that she had known defendant only a few months and was not his girlfriend, was contradicted by Detective Burks.

The trial court found that defendant was the actual killer, observing that it did not "make any sense" that defendant would ask, "give me the gun," after Salazar supposedly said, "'[g]ive me the gun,'" if Salazar was the shooter. The court found that

9

defendant therefore was ineligible for relief under section 1172.6. Defendant timely appealed.

## III. DISCUSSION

### A. *Any Error by the Trial Court was Harmless*

In his opening brief, defendant raised numerous challenges to the trial court's finding that he was the actual killer. We then requested that the parties provide additional briefing on whether the trial court's ruling could be affirmed on any legal theory, and whether substantial evidence supported a finding beyond a reasonable doubt that defendant was a major participant who acted with reckless indifference to human life. Having considered the parties' arguments, we conclude that even assuming the court erred in finding that defendant was the actual killer, any such error was harmless. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 717 (*Vance*) [harmless error analysis under state law standard applies to § 1172.6 proceedings]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204 [we may affirm a court ruling that is correct on any ground].)

Section 1172.6 relief "is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . Section 190.2.' ( . . . § 189, subd. (e)(3) . . . .)" (*People v. Strong* (2022) 13 Cal.5th 698, 710.) On this record, it is not reasonably probable that defendant would have enjoyed a more favorable outcome in the absence of any assumed error because

10

there was strong evidence that defendant was a major participant who acted with reckless indifference to human life.

### 1. Major Participant

In determining whether the defendant was a major participant in the underlying felony, "the ultimate question [is] whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*).) Among the relevant factors are the following: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Ibid.*, fn. omitted; *People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*).)

Here, Garcia testified—and defendant admitted to Detective Burks—that prior to the shooting, everyone in the car, including defendant, agreed to commit a robbery. Although defendant did not supply the gun used in the shooting, defendant admitted to seeing and touching fellow robber Salazar's gun on the day of the robbery. Moreover, it was undisputed that defendant was at the scene of the robbery and admitted during his testimony that he observed the shooting. Finally, defendant

11

fled the scene of the robbery and shooting, and as he did so, said that the murder victim "deserved it." These factors demonstrate that defendant was a major participant in the robbery and attempted robbery.

### 2. Reckless Indifference to Human Life

"'[T]he culpable mental state of "reckless indifference to life" is one in which the defendant "knowingly engag[es] in criminal activities known to carry a grave risk of death" [citation] . . . .' (*People v. Estrada* (1995) 11 Cal.4th 568, 577.) 'The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' (*Banks, supra*, 61 Cal.4th at p. 801.) '[I]t encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' (*Clark, supra*, 63 Cal.4th at p. 617.)" (*In re Loza* (2017) 10 Cal.App.5th 38, 51–52.)

Among the relevant factors to consider in determining whether a defendant acted with reckless indifference to human life are: (1) knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of the violence during the felony. (*Clark, supra*, 63 Cal.4th at pp. 618–623.) No one of the factors for determining reckless indifference

"'is necessary, nor is any one of them necessarily sufficient.' [Citation.]" (*Id.* at p. 618.)

As we note above, defendant admitted to seeing and touching Salazar's gun earlier in the day. Further, he traveled with Salazar to the scene of the robbery. Thus, it is reasonable to infer that he was aware that Salazar was armed with the gun when defendant agreed to commit a robbery. Further, defendant was present during the robbery and shooting but did nothing to restrain the crimes from occurring. The duration of the crimes also supports a finding of reckless indifference. This was not a case of a robbery that immediately turned into a shooting. Instead, during the course of the altercation, Figueroa was able to flee from two of the attackers, Lopez fought with the other two attackers and ultimately challenged one of the robbers to shoot him, and the shooter asked for and was provided a gun by a confederate. (See *Clark, supra*, 63 Cal.4th at p. 620 ["Where a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence'"].) Finally, defendant did not minimize the violence. Not only did he refuse to leave when Garcia tried to get him to do so, but he admitted that he asked for a gun.

On this record, defendant has failed to demonstrate that it is reasonably probable he would have obtained a more favorable result absent any error. (*Vance, supra*, 94 Cal.App.5th at p. 717.)

B.    *Burden of Proof*

Defendant next argues that the trial court improperly shifted the burden of proof from the prosecutor to him. Section

1172.6, subdivision (d)(3) requires that "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the [defendant] is guilty of murder . . . under California law as amended by the changes to Section 188 or 189. . . ." Whether the trial court applied a statute properly is a question of law we review de novo. (See *People v. Harring* (2021) 69 Cal.App.5th 483, 495.)

According to defendant, the trial court impliedly required him to prove that there were more than two shooters and that Salazar did not have the gun on him at the time of the shooting. We reject defendant's assertion. "It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032; see Evid. Code, § 664.) Here, in reaching its decision, the court expressly stated that the prosecutor was required to prove beyond a reasonable doubt that defendant was guilty of murder. Absent an affirmative showing to the contrary, we do not find that the court shifted the burden of proof.

C.    *Ineffective Assistance of Counsel*

Defendant next argues that his trial counsel rendered ineffective assistance by: failing to introduce certain evidence that is the subject of defendant's request for judicial notice (which we have granted); failing to make the arguments that defendant raises on appeal; and failing to make arguments that would demonstrate defendant was not the shooter. We reject this claim.

First, defendant's contention that his Sixth Amendment right to the effective assistance of counsel has been violated is

14

meritless because "'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 226.)

Second, we disregard defendant's assertion that he nonetheless had a due process right to the effective assistance of counsel, which was violated by counsel's performance. By raising this argument for the first time in his reply brief, he has waived it. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

Finally, even if defendant had a constitutional right to the effective assistance of counsel during these postconviction proceedings, he could not demonstrate prejudice. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 [defendant must show deficient performance by counsel prejudiced defense]; *People v. Mai* (2013) 57 Cal.4th 986, 1009–1010 [same].) We have taken judicial notice of the records that defendant complains his counsel failed to introduce in the trial court and those records do not demonstrate prejudice. Further, we have affirmed the trial court's ruling based on defendant's failure to demonstrate he was prejudiced by the trial court's actual killer finding. Thus, defendant's arguments concerning counsel's purported failure to challenge the trial court's actual killer finding are not material to the issue of prejudice. In any event, trial counsel is not ineffective merely for failing to raise every possible argument. (See *People v. Carter* (2003) 30 Cal.4th 1166, 1211 ["A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy"].)

## IV. DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

LEE, J.*

---

* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.